Priscilla EVA, et al., Plaintiffs,

v.

MIDWEST NATIONAL MORTGAGE
BANC, INC., et al., Defendants.

No. 1:00CV1918.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 15, 2001.

David G. Oakley, Kramer & Associates, Cleveland, OH, Diane E. Citrino, Patricia A. Kidd, Fair Housing Law Clinic, Cleveland, OH, Jean Constantine-Davis, Nina F. Simon, AARP Foundation Lit., Washington, DC, for Priscilla Eva, Marylea Monroe, Grover Monroe, Robin Gainer, Sandra Folkman.

Carole O. Heyward, Metro. Strategy Group, Cleveland Heights, OH, for Metropolitan Strategy Group.

Leo M. Spellacy, Patricia A. Screen, Porter, Wright, Morris & Arthur, Cleveland, OH, Mark E. Elsener, Porter Wright Morris & Arthur LLP, Cincinnati, OH, for Midwest Nat. Mortgage Banc, Inc., Phillip R. Carson, Thomas Butzer, Robert Flynt, Clint Welsch, Gene Clabes, William Denight, Wesley Financial, Nick Mayer.

Charles W. Fonda, Michael B. Shagrin, Cleveland, OH, for Robert Flynt.

Darrell A. Clay, Kenneth A. Zirm, Mary B. Matheney, Walter & Haverfield, LLP, Cleveland, OH, William C. McIntyre, William C. McIntyre, P.A., Palm City, FL, for U.S. Mortgage Reduction, Inc.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon several motions to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). More specifically, currently pending on this Court's docket are: (1) a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) filed by Defendant U.S. Mortgage Reduction, Inc. ("USMR"), (Doc. # 32); (2) a Partial Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) filed by Defendants Midwest National Mortgage Banc, Inc. ("Midwest"), Phillip Carson, Thomas Butzer, Robert Flynt, Clint Welsh, Nick Mayer, and Wesley Financial ("Wesley"), (Doc. # 46); and (3) a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) filed by Defendants Gene Clabes and William Denight, (Doc. # 46).

For the sake of clarity, the Court notes that it shall consider the Partial Motion to Dismiss the Amended Complaint filed by Defendants Midwest, Carson, Butzer, Flynt, Welsh, Mayer, and Wesley, in conjunction with the Motion to Dismiss filed by Defendants Clabes and Denight, as these parties are represented by the same counsel and the respective Motions are set forth in the same document. Except as otherwise indicated in this Memorandum Opinion and Order, the Court shall refer to Defendants Midwest, Carson, Butzer, Flynt, Welsh, Mayer, Wesley, Clabes, and Denight collectively as the "Midwest De-fendants" and shall refer to the Motions in Document # 46 collectively as the "Motion to Dismiss filed by the Midwest Defendants." (Doc. # 46)

For the reasons set forth below, the Motions to Dismiss are granted in part and denied in part. In particular, the Midwest Defendants' Motion to Dismiss Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") claim in Count I is granted to the extent that Plaintiffs fail to state a claim against Defendants Clabes and Denight. Plaintiffs' RICO claim is hereby dismissed with respect to those Defendants. However, the remainder of the Motion to Dismiss Count I made by the Midwest Defendants is denied. Defendant USMR's Motion to Dismiss Count I is, likewise, denied.

With respect to the Fair Housing Act ("FHA") claims in Count II, Defendants' Motions to Dismiss are granted as to Plaintiffs' claims arising under 42 U.S.C. § 3604. Plaintiffs do not state a claim for relief with respect to that provision. Furthermore, the Motions to Dismiss Plaintiffs' claims arising under 42 U.S.C. § 3605 by Defendants Clabes and Denight, and Defendant USMR are denied.

As to Count III, the Midwest Defendants' Motion to Dismiss Plaintiffs' claim under Ohio Revised Code Chapter 4112.02(H)(1) is granted. In making this ruling, the Court notes that Plaintiffs' claims under § 4112.02(H)(3)and (5) and § 4112.021 remain pending against the Midwest Defendants, including Defendants Clabes and Denight. The Motion to Dismiss filed by Defendant USMR as to this Count is granted as to the claims arising under § 4112.02(H)(1), (5) and § 4112.021, but denied as to the claim arising under § 4112.02(H)(3).

The fraud claim in Count IV survives the Motions to Dismiss, except to the extent that Plaintiffs attempt to state a claim

against Defendants Clabes and Denight. Because the Amended Complaint fails to comport with the pleading requirements in Rule 9(b) with respect to Defendants Clabes and Denight, the fraud claim against them is dismissed.

Similarly, the Motions to Dismiss are denied to the extent that they seek dismissal of the claim of unconscionability in Count V; the claim of conversion against Defendant Wesley in Count VI; and the claim of civil conspiracy in Count X, except as the civil conspiracy claim applies to Defendants Clabes and Denight.

As to Count XI, the Motions to Dismiss are denied, except to the extent that Plaintiffs attempt to assert PCA claims against Defendants Clabes and Denight. Count XI is dismissed as it relates to those Defendants.

Finally, the Motions to Dismiss Plaintiffs' public policy claim in Count XII are granted as to all Defendants. Count XII is thereby dismissed in its entirety.

## I. BACKGROUND

On July 27, 2000, Plaintiffs Priscilla Eva, Marylea Monroe, Grover Monroe and Metropolitan Strategy Group filed an eleven-count Complaint in this Court pursuant to its federal question jurisdiction. (Doc. # 1) On October 17, 2000, Plaintiffs filed a twelve-count Amended Complaint which, *inter alia*, added Plaintiffs Sandra Folkman and Robin Gainer. (Doc. # 17) In the Amended Complaint, Plaintiffs allege that Defendants engaged in a pattern or practice of predatory and sexually discriminatory lending directed at female borrowers for residential loans in the Cleveland, Ohio metropolitan area. *Id.* at ¶ 1. Plaintiffs contend that Defendants' conduct consists of, but is not limited to, the following:

! targeting property owners with substantial equity in their property and/or the ability to make a substantial payment at closing;

! misrepresenting loan terms and inflating home appraisals;

! establishing impossible repayment terms;

! inducing borrowers to obtain loans that Defendants know or should know that borrowers will be unable to repay; and

! charging undisclosed and/or improper fees.

*Id.* at ¶ 2. Plaintiffs state that Defendants effectively "lock the borrower in an unaffordable loan that includes equity stripping features such as inflated home appraisals which allows [sic] Defendants to deceive secondary market purchasers and extract even more money for themselves." *Id.* at ¶ 4. Plaintiffs further allege that Defendants charged improper fees in the nature of "kickbacks" for valueless services. *Id.*

Count I of the Amended Complaint alleges that Defendants violated RICO, 18 U.S.C. §§ 1962(c)-(d) and 1964(c), by engaging in a pattern of racketeering activity. *Id.* at ¶¶ 101–121. Count II claims that Defendants violated the FHA, 42 U.S.C. § 3601 *et seq.*, by making housing unavailable based upon sex, and discriminating in the provision of services and financial assistance based upon the same. *Id.* at ¶¶ 122–124. Count III asserts a violation of rights based upon gender pursuant to Chapter 4112 of the Ohio Revised Code. *Id.* at ¶¶ 125–128. Count IV claims that Defendants committed fraud by inducing the individual Plaintiffs to enter into the loan agreements and related transactions. *Id.* at ¶¶ 129–137. Count V states that "[t]he loan agreements and related documents are unconscionable and should be null and void from their inception." *Id.* at ¶ 146. Alternatively, Count V asks this Court to strike the unconscionable terms and charges from the agreements, refunding sums when appropriate.

*Id.* at ¶ 147. Count VI is for the common law tort of conversion, brought only against Defendant Wesley. *Id.* at ¶¶ 148–154. Count VII asserts a cause of action under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, claiming that Defendants discriminated in the availability and terms and conditions of credit based upon sex. *Id.* at ¶¶ 155–156. Count VIII contends that Defendants Midwest and/or Wesley violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2602(1), when they "accepted a split portion or percentage of the payments in the amount of $995.00 (Eva and Monroe) and $795 (Folkman), and $1590 (Gainer) in connection with federally related mortgage loans, for something other than goods or facilities actually provided or services actually performed...." *Id.* at ¶ 160. Count IX asserts that Defendant Midwest violated the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1639, by, *inter alia,* failing to provide the proper disclosures. *Id.* at ¶¶ 163–170. Count X sets forth a claim of civil conspiracy against Defendants. *Id.* at ¶¶ 171–174. Count XI alleges that Defendants "conspired to commit and committed multiple acts of corrupt activity including wire fraud, mail fraud and conversion." *Id.* at ¶ 176. Count XII of the Amended Complaint asserts that Defendants' actions violate the public policy of the State of Ohio and the United States.[1] *Id.* at ¶¶ 186–187.

Counts I through XII of the Amended Complaint are brought by Plaintiffs Priscilla Eva, Marylea Monroe, Sandra Folkman, and Robin Gainer. Grover Monroe joins in all Counts, with the exception of

Count VII. Metropolitan joins only in Counts II, III, and XII. On November 1, 2000, Defendant USMR filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6). (Doc. # 32) On November 22, 2000, the Midwest Defendants filed the Motion to Dismiss the Amended Complaint pursuant to the same Rule. (Doc. # 46) The respective Motions to Dismiss filed by USMR and the Midwest Defendants are currently before the Court for disposition.

On January 10, 2001, the Court held a status conference in this matter. At the conference, Plaintiffs' counsel indicated a willingness to dismiss certain claims. Amidst some confusion between the parties concerning the claims in the Amended Complaint, the Court requested that Plaintiffs' counsel clarify in writing what claims Plaintiffs were willing to dismiss against whom. On January 19, 2001, the Court received a faxed copy of a Letter of Clarification. In the letter, Plaintiffs' counsel made clear that Plaintiffs are no longer pursuing any claims against any Defendants under ECOA. As such, the Court need not consider Count VII of the Amended Complaint, and that claim is hereby DISMISSED WITHOUT PREJUDICE. Plaintiffs' counsel also clarified that Plaintiffs do not assert a RESPA claim against USMR, and have not pleaded TILA claims against any party other than Midwest.[2] Finally, Plaintiffs' counsel addressed the conversion count contained in Count VI of the Amended Complaint. Plaintiffs' counsel reiterated that Plaintiffs claim only that Defendant Wesley converted their funds. However, Plaintiffs' counsel also indicated that as the evidence is

---

1. In the Amended Complaint, the public policy claim appears as "Count XI." However, due to the fact that the preceding Count, alleging a violation of Ohio's RICO statute, is also labeled as "Count XI," the Court will deem the public policy claim to be properly labeled as Count XII.

2. The Court notes that Plaintiffs made the foregoing information available in the Statement of Points and Authorities in Opposition to Defendants' Motions for Judgment on the Pleadings. *See* (Doc. # 52 at 3 n. 1)

developed in this case, Plaintiffs anticipate holding USMR likewise responsible for conversion under agency principals. With that procedural posture in mind, the Court now turns to the Motions to Dismiss.

## II. STANDARD OF REVIEW

■ On a motion to dismiss brought pursuant to Rule 12(b)(6), the court's inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808 (3rd Cir.1990). The court "must construe the complaint in a light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996). However, while construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath v. Ashland Oil, Inc.,* 834 F.Supp. 971, 975 (S.D.Ohio 1993). Thus, a plaintiff must plead more than bare legal conclusions. "A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996) (quoting *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993)).

## III. DISCUSSION

### A. Count I: Plaintiffs' RICO Claim

■ In Count I of the Amended Complaint, Plaintiffs bring a cause of action against Defendants based on a violation of 18 U.S.C. §§ 1962(c)-(d), and 1964(c). Section 1962(c)-(d), entitled "Prohibited Activities" provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

Section 1964(c) of RICO gives individuals a private right of action with recourse to treble damages and reasonable attorney fees.

In Count I, Plaintiffs assert that Defendants Wesley, Midwest, USMR, and seven individuals formed an association-in-fact enterprise. (Doc. # 52 at 17) They allege that the purpose of the association-in-fact enterprise was to deceive borrowers about the terms and conditions of their loans, so that Defendants may earn excessive fees and interest rates. *Id.* Plaintiffs claim that Defendants accomplished that scheme by:

> 1) charging dramatically higher interest rates and fees than what they promised; 2) using the [Equity Acceleration Program ("EAP")] disclosures to misrepresent loan terms, including the length of the loan and the rate of interest charged; 3) using the EAP program to generate additional fees to an affiliate, Wesley, without complying with the prohibitions or requirements under federal Truth in Lending laws for high cost

mortgages (the Home Ownership Equity Protection Act ("HOEPA"). 15 U.S.C. § 1639); 4) making loans to borrowers that the borrowers would be unable to repay; and 5) soliciting inflated appraisals of the homes securing the loans so that highly inflated fees could be charged and so that the loans could be sold to unsuspecting secondary market purchasers.

*Id.* On this basis, Plaintiffs claim to have properly pled a RICO claim against Defendants. *Id.*

Within their respective Motions, both the Midwest Defendants and Defendant USMR move to dismiss Plaintiffs' RICO claim. The Midwest Defendants move to dismiss Plaintiffs' RICO claim based upon Plaintiffs' alleged failure to plead the following: (1) the necessary predicate acts as required by statute; (2) fraud with particularity; (3) the alleged enterprise acted as a continuing unit; and (4) the alleged enterprise was separate and distinct from the alleged RICO persons. (Doc. # 46 at i) Likewise, Defendant USMR moves to dismiss Plaintiffs' RICO claim on the grounds that Plaintiffs failed to allege a RICO person distinct from the RICO enterprise; the Amended Complaint does not properly state a claim for an association-in-fact enterprise; and Plaintiffs failed to properly plead a claim for conspiracy to commit a RICO violation. (Doc. # 38 at i)

With those arguments in mind, the Court now turns to Plaintiffs' RICO claim. The Court first examines the existence of an enterprise distinct from the alleged RICO persons as required by the relevant case law. Next, the Court considers whether Plaintiffs properly allege an association-in-fact enterprise in accordance with the RICO statute. After doing so, the Court inquires as to whether Plaintiffs plead the predicate acts necessary to allege a violation of RICO. Finally, the

Court examines whether Plaintiffs plead sufficient facts to allege a RICO conspiracy.

### 1. Existence of a RICO Enterprise

 In this case, Defendants assert that the Amended Complaint fails to allege the existence of a RICO enterprise distinct from the alleged RICO persons. As recognized previously, pursuant to 18 U.S.C. § 1962(c), "it shall be unlawful for any *person* employed by or associated with any *enterprise* ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity..." *Id.* (emphasis added). A single individual or corporation cannot be both the "enterprise" and the "person" under RICO. *See Davis v. Mutual Life Ins. Co. of New York,* 6 F.3d 367, 377 (6th Cir.1993), *cert. denied,* 510 U.S. 1193, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994). Thus, the Sixth Circuit affirmed a verdict of RICO liability when it rejected a claim that the RICO enterprise was insufficiently distinct from the RICO persons participating in the enterprise, holding "the pleadings adequately state that each of the five defendants was a 'person' and together they formed a racketeering 'enterprise.'" *Fleischhauer v. Feltner,* 879 F.2d 1290, 1297 (6th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990).

Here, the Amended Complaint alleges that an enterprise existed consisting of Midwest, Carson, Butzer, Flynt, Welsh, Clabes, Denight, Wesley, and USMR. (Doc. # 17 at ¶¶ 102–114) Accordingly, the Amended Complaint alleges an enterprise in which each RICO "person" is one of a number of members of the RICO enterprise. Contrary to the contention of the Midwest Defendants, the Amended Complaint alleges that "persons" participated in the "enterprise" who are distinct from

the corporate defendant Midwest. That is, the members of the alleged "enterprise" are not merely employees of Midwest conducting regular corporate activity. Rather, the Amended Complaint alleges that Defendants Wesley and USMR were members of the RICO enterprise that exist as separate legal entities distinct from, although in some way related to, the Midwest Defendants.

In response to Defendants' argument, Plaintiffs do not dispute that the person who violates RICO must be in some way distinct from the enterprise under the statute. (Doc. # 52 at 18) Nevertheless, Plaintiffs claim that Defendants "turn this concept on its head." *Id.* Plaintiffs explain:

> Defendants argue that if all the persons liable for wrongdoing form an enterprise through which the wrongdoing is accomplished, they are insulated from RICO liability. Defendants' analysis so irrationally contorts RICO as to insulate from any liability the very persons RICO intends to hold liable.

> . . . . .

> RICO requires that the 'person' who is to be held liable must be in some manner distinct from the 'enterprise' whose affairs the 'person' conducts. Defendants argue that the RICO claim must be dismissed because all of the 'persons'/Defendants are related to one another through employment, agency, or ownership relationships and are, therefore, part of a single organization. Defendants miss the point. The single organization to which all Defendants belong is the RICO 'enterprise' through which they have conducted the racketeering activity. Section 1962(c), in fact, requires that in order to be held liable under RICO, 'persons' must be 'employed by or associated with' the enterprise. Courts interpreting Sections 1962(c) and 1961 recognize that

while some distinction between the 'enterprise' and the 'person' must exist, some affiliation between them is required to hold the 'person' liable.

*Id.* at 18–20. Furthermore, Plaintiffs argue that the case of *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir.1989) demonstrates that some affiliation between the "enterprise" and the "person" is permissible. *Id.* at 20.

In *Fleischhauer*, the appellant asserted that the "enterprise" was not sufficiently distinct from the "person" because one of the individual defendants alleged to be a part of the "enterprise" owned 100% of the corporate defendants alleged to be a part of the same "enterprise." 879 F.2d at 1297. The Sixth Circuit found that "[s]uch argument has no merit; the fact that [the individual defendant] owned 100% of the [corporate defendants'] shares does not vitiate the fact that these corporations were separate legal entities." *Id.* Based upon this proposition, the Sixth Circuit held that the jury had ample basis to find that all defendants were collectively the "enterprise" within the meaning of the RICO statute. *Id.*

In this case, the so-called "nonidentity" or "distinctness" requirement is satisfied based upon the fact that the alleged "enterprise" does not consist only of Midwest's subdivisions, agents, or members. *See Begala v. PNC Bank, Ohio, Nat'l Assoc.*, 214 F.3d 776, 781 (6th Cir. 2000). The Amended Complaint does not allege, as Defendants contend, that an organization joined with its own members to undertake regular corporate activity and thereby became an organization distinct from itself. *See id.* Although it is clear from the pleadings that the individual Defendants are employees and/or agents of Midwest, that fact alone does not render Plaintiffs' RICO claim insufficient to state

a claim upon which relief may be granted. The Amended Complaint states the following with respect to the corporate Defendants:

Defendant Midwest National Mortgage Banc, Inc. ("Midwest"), on information and belief, is an Ohio Corporation which is registered to do business in Ohio and Kentucky and has its principal place of business at 8150 Corporate Park Drive, Suite 300, Cincinnati, Ohio 45242–3309. Midwest has operated and continues to operate as a mortgage lender, making and servicing first and second trust loans in Ohio.

. . . . .

Defendant Wesley Financial, on information and belief, is an Ohio Corporation which is registered to do business in Ohio and Kentucky and has its principal place of business at 8150 Corporate Park Drive, Suite 300, Cincinnati, Ohio. On information and belief Wesley Financial and Carson are agents of and/or affiliated with Defendant U.S. Mortgage Reduction, Inc., whose "Equity Acceleration Program ("EAP") is a fraudulent scheme to extract excessive funds from borrowers". U.S. Mortgage Reduction, Inc. has its principal place of business in South Carolina.

(Doc. # 17 at ¶¶ 12–18) Based upon this information, even if Defendant Wesley is assumed to be one in the same as Defendant Midwest, it is still not clear from the pleadings that Defendant USMR is a subdivision, agent, or member of Midwest. The fact that Defendants Wesley or Carson may be agents and/or affiliated with USMR does not necessarily signify that the three corporate Defendants are a single legal entity. To make such a conclusion would be to draw an inference against Plaintiffs, who collectively constitute the non-moving party. Such an assumption is contrary to the established practice of reviewing motions to dismiss made pursuant to Rule 12(b)(6) and "the rule that RICO pleadings are to be liberally construed." *Begala,* 214 F.3d at 781; *see also United States v. Turkette,* 452 U.S. 576, 586, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (noting that § 904(a) of RICO directs that the provisions of the RICO statute shall be liberally construed to effectuate its remedial purposes). For the foregoing reasons, the Court finds that Plaintiffs' Amended Complaint adequately alleges the existence of a RICO enterprise sufficient to satisfy the "non-identity" or "distinctness" requirement.

### 2. Association–in–Fact

 Next, the Court addresses Defendants' argument that Plaintiffs fail to properly plead an association-in-fact enterprise within the context of their RICO claim. It well established that "[a] properly pled RICO claim must cogently allege activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Begala,* 214 F.3d at 782 (internal quotations omitted); *Turkette,* 452 U.S. at 576, 101 S.Ct. 2524; *Frank v. D'Ambrosi, et al.,* 4 F.3d 1378, 1386 (6th Cir.1993). That is, a plaintiff must allege facts which suggest that the behavior of the defendants is coordinated, such that they function as a continuing unit. *See Begala,* 214 F.3d at 782. In order to meet this requirement, the plaintiff must allege some minimal level of organizational structure between the entities involved. *See VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir.2000). A plaintiff may establish such an organizational structure by alleging facts that demonstrate a chain of command or other evidence of a hierarchy, which may be limited in nature. *See id.* at 700.

In this case, the Court finds that Plaintiffs properly allege an association-in-fact enterprise. The Amended Complaint alleges activity which demonstrates ongoing, coordinated behavior among Defendants that satisfies the association-in-fact requirement. Plaintiffs allege that the purpose of the association-in-fact enterprise was to deceive borrowers about the terms and conditions of their loans, so that Defendants may earn excessive fees and interest rates. (Doc. # 52 at 17) In the Amended Complaint, Plaintiffs generally claim that: (1) the Midwest Defendants gave them loans and then charged them dramatically higher interest rates and fees than those originally promised; (2) the Midwest Defendants unnecessarily enrolled Plaintiffs in the EAP managed by USMR, using the EAP's disclosures to misrepresent the actual loan terms; (3) the Midwest Defendants along with USMR used the EAP to generate additional fees to Wesley, which acted as an agent of USMR by collecting fees for the EAP; (4) the Midwest Defendants made loans to borrowers that the borrowers would be unable to repay; and (5) the Midwest Defendants solicited inflated appraisals of the homes securing the loans so that highly inflated fees could be charged and so that the loans could be sold to unsuspecting secondary market purchasers. *Id.; see e.g.*, (Doc. # 17 at ¶¶ 13, 27, 161) Based upon these facts, Plaintiffs contend that "Defendants were associated for the common purpose of engaging in a course of conduct, to induce borrowers to take out loans from [Midwest] with the common motivation for profit." (Doc. # 52 at 24 (citing Doc. # 17 at ¶ 116))

As to the structure of the alleged enterprise, Plaintiffs assert that Defendant Carson is the President and CEO of Midwest, which was the lender responsible for Plaintiffs' loans; an agent of USMR, which managed the EAP; and a principal of Wesley, which collected the fees for the EAP. (Doc. # 17 at ¶¶ 13, 18, 27). Accordingly, the Amended Complaint identifies a single person, namely Carson, who is affiliated with each corporate Defendant and is the supervisor of the individual Defendants. Thus, Plaintiffs assert that "[i]n the hierarchy of the organization, Philip Carson was at the top." (Doc. # 52 at 24)

Based upon the foregoing, the Court finds that Plaintiffs set forth facts demonstrating that Defendants functioned as a continuous unit which had an ascertainable organizational structure. The Amended Complaint alleges a stable and fluid entity sufficient to constitute a RICO enterprise because Plaintiffs set forth facts which demonstrate that Defendants engaged in ongoing, coordinated behavior that, if assumed to be true, would constitute an association-in-fact. Stated another way, the Amended Complaint alleges that the enterprise is continuing and not merely an ad hoc collection of individuals who temporarily joined forces. It also alleges a structure of the enterprise and roles separate from the predicate acts themselves. Therefore, the Court finds Defendants' argument that Plaintiffs fail to properly plead an association-in-fact enterprise to be without merit.

### 3. Predicate Acts

The Court now examines the Midwest Defendants' argument that Plaintiffs fail to allege RICO predicate acts with the particularity required by Rule 9(b). It is clear that a plaintiff attempting to set forth a RICO claim must allege facts to demonstrate that the defendant committed an illegal predicate act. *See Walters v. First Tennessee Bank, N.A., Memphis et al.*, 855 F.2d 267, 272 (6th Cir.1988) (citing 18 U.S.C. § 1962). Amongst other offenses, wire fraud is considered to be sufficient to constitute a predicate act for pur-

poses of alleging a RICO cause of action. *See Grantham and Mann, Inc. v. American Safety Prod., Inc.,* 831 F.2d 596, 605 (6th Cir.1987). A wire fraud violation consists of "(1) the formation of a scheme or artifice to defraud[;] (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Central Distrib. of Beer, Inc. v. Conn,* 5 F.3d 181 (6th Cir.1993); *United States v. Horry,* 49 F.3d 1178, 1179 (6th Cir.1995). In addition, the RICO plaintiff must set forth facts to demonstrate detrimental reliance upon the fraudulent conduct. *See Kenty, et al. v. Bank One, Columbus, N.A.,* 92 F.3d 384, 389 (6th Cir. 1996).

In a case involving alleged mail fraud, the Supreme Court made clear that "the use of the mails need not be an essential element of the scheme." *Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Rather, the Supreme Court recognized that it is sufficient for the use of the mails to be an "incident to an essential part of the scheme," or a "step in the plot." *Id.* (alteration omitted). The Sixth Circuit considered a similar issue in the context of alleged wire fraud in *Roberts v. United States,* 226 F.2d 464 (6th Cir.1955). In that case, the defendants were convicted of using an interstate telephone call for the purpose of executing a scheme to defraud. *Id.* The indictment charged that the defendants devised a scheme to defraud a landscape gardener by falsely representing that they owned and had authority to sell a specified amount of blue grass sod. *Id.* at 466. The evidence presented at trial demonstrated that the defendants arranged to meet the landscape gardener at a certain location on a certain date for the purposes of closing the deal. *Id.* Due to an unanticipated delay, however, defendants called the landscape gardener to advise him that

they would be late and to request that he await their arrival. *Id.* In reviewing the defendants' challenge to their convictions, the Sixth Circuit held that the telephone call in question was made in furtherance of the scheme to defraud and was sufficient to sustain the allegation in the indictment. *Id.* In *Roberts,* as in the instant case, the information conveyed through the telephone communication was not alleged to be false. *Id.*

In instances in which a wire fraud claim is asserted, Rule 9(b) requires the plaintiff to state the fraud claim with particularity. *See Advocacy Org. for Patients and Providers, et al. v. Auto Club Ins. Ass'n, et al.,* 176 F.3d 315, 322 (6th Cir.1999). The pleading requirements in Rule 9(b) are to provide fair notice to the defendant, such that the defendant may prepare a pleading in response to the allegations of fraud. *See id.* Furthermore, Rule 9(b) requires that fraud be pled with particularity in order to:

place the defendants on notice of the precise misconduct of which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place and time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). Although the Sixth Circuit reads Rule 9(b)'s requirements liberally, the plaintiff is required to allege the time, place, and content of the alleged misrepresentation; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *See Advocacy Org. for Patients and Providers,*

*et al.*, 176 F.3d at 322 (quoting *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (internal quotations omitted)).

In Count I of the Amended Complaint, Plaintiffs claim that in late August or September of 1999, Plaintiffs Eva and Gordon Monroe received unsolicited telephone calls from an unknown individual affiliated with Midwest, who referred them to the Midwest Defendants to complete a loan application. (Doc. # 17 at ¶¶ 21, 42) Similarly, Plaintiffs allege that in November of 1999, Plaintiff Gainer received two pertinent telephone phone calls. *Id.* at ¶ 81. In the first, she was asked via recorded message if she was interested in refinancing her home. *Id.* The next day, Plaintiff Gainer received a follow-up telephone call from a Midwest representative who told her that someone would be sent to her home to discuss refinancing. *Id.*

Plaintiffs argue that such allegations, viewed against the backdrop of the entire Amended Complaint, are sufficient to satisfy Rule 9(b). Plaintiffs argue the following:

> Plaintiffs have provided both a detailed description of the scheme to defraud and the individual misrepresentations made to the Plaintiffs. The scheme to defraud engaged in by Defendants was to misrepresent loan terms and fees to the Plaintiffs to induce reliance on those misrepresentations so that Plaintiffs would enter into transactions through which Defendants earned excessive fees and interest. Each of the Plaintiffs during the course of their transaction dealt with at least one of the Defendants. For example, Plaintiff Eva identified Defendant Butzer as making specific misrepresentations concerning the interest rate, the term of the loan, and fees to be charged.

. . . . .

Plaintiffs have also alleged what role each Defendant played in the scheme: 1) Philip Carson as the President of Midwest, the Principal of Wesley, the Representative of USMR; 2) Midwest as the lender responsible for telemarketing and determining loan terms; 3) Wesley as the entity collecting fees for the EAP Program; 4) USMR as the entity responsible for managing and marketing the EAP Program used by Defendants to defraud Plaintiffs; and 5) the individual Defendants as various loan officers and corporate officers of Midwest.

(Doc. # 52 at 31) Accordingly, Plaintiffs claim to have alleged with particularity the scheme to defraud. *Id.*

In contrast, the Midwest Defendants advance two theories in support of the position that the Amended Complaint is insufficient to properly set forth a RICO claim on the basis that it lacks the requisite particularity. (Doc. # 46 at 11) First, the Midwest Defendants claim that the Amended Complaint fails to inform each Defendant of their alleged responsibility in the purported scheme. *Id.* In this regard, the Midwest Defendants claim that the Amended Complaint only identifies the alleged fraudulent conduct of the following individuals: Defendants Butzer, Flynt, Welsh, and Mayer. *Id.* Thus, the Midwest Defendants contend that Plaintiffs fail to set forth facts alleging the role played by Defendants Carson, Clabes, Denight, Midwest, USMR, and Wesley. *Id.* Next, the Midwest Defendants claim that the Amended Complaint fails to allege the predicate act of wire fraud with particularity. *Id.* The Midwest Defendants state that the "Amended Complaint describes only describes three telephone calls—all of which occurred with unknown individuals allegedly affiliated with Midwest." *Id.* Accordingly, the Midwest Defendants state that the Amended Complaint lacks the

specificity required to set forth the predicate act of wire fraud. *Id.* at 12.

In reviewing the arguments set forth by the parties on this issue, the Court finds the Midwest Defendants' Motion to be meritorious in part. Here, the Amended Complaint provides fair notice to only certain Defendants in compliance with Rule 9(b). As the Midwest Defendants recognize in their Motion to Dismiss, the Amended Complaint does set forth the alleged fraudulent conduct of Defendants Butzer, Flynt, Welsh, and Mayer. *Id.* at 11. Accordingly, the Amended Complaint adequately informs each of these Defendants of their alleged responsibility in the purported scheme. Furthermore, in order satisfy the predicate act requirement of the RICO statute, Plaintiffs need not allege that these Defendants were particularly involved in the telephone communications themselves. Rather, it is only required that the telecommunication be made in furtherance of the alleged fraudulent conduct. Thus, the Court finds Plaintiffs' allegation that the telephone calls were a "step in the plot," coupled with Plaintiffs' specific allegations concerning the fraudulent conduct of these Defendants, to be sufficient to satisfy the pleading requirements of Rule 9(b).

Likewise, the Court finds that Plaintiffs allege sufficient detail regarding the fraudulent conduct of Defendants Carson, Midwest, USMR, and Wesley. The Amended Complaint contains facts to demonstrate the alleged time, place, and content of their alleged misrepresentations; the overall fraudulent scheme; the fraudulent intent of these Defendants; and the injury Plaintiffs suffered as a result of the fraud. Plaintiffs allege that Defendant Carson, the CEO of Midwest, was the person who fraudulently signed the loan forms as the "EAP Independent Representative." (Doc. # 17 at ¶ 27) Plaintiffs further allege

that Defendant Carson played a role in enrolling Plaintiff Marylea Monroe in the EAP. *Id.* at ¶ 48. With respect to Defendants Midwest, USMR, and Wesley, the Amended Complaint states that Defendant Midwest, though its agents and representatives, gave Plaintiffs loans and in turn charged them dramatically higher interest rates and fees than those originally promised; Defendant Midwest unnecessarily enrolled Plaintiffs in the EAP managed by Defendant USMR, using the EAP's disclosures to misrepresent the actual loan terms; Defendant Midwest along with Defendant USMR used the EAP program to generate additional fees to Defendant Wesley, which acted as an agent of USMR by collecting fees for the EAP; Defendant Midwest made loans to Plaintiffs, knowing that the borrowers would be unable to repay; and Defendant Midwest solicited inflated appraisals of the homes securing the loans so that highly inflated fees could be charged and so that the loans could be sold to unsuspecting secondary market purchasers. *Id.* at ¶¶ 13, 27, 161. In addition, Plaintiffs allege that these Defendants were associated for the purpose of engaging in an intentional course of conduct with the common motivation for improperly achieved profit. *Id.* at ¶ 116. This detail concerning Defendants Carson, Midwest, USMR, and Wesley fulfills the heightened pleading requirements.

 To the contrary, however, the Court finds that Plaintiffs fail to allege sufficient detail concerning the fraudulent conduct of Defendants Clabes and Denight in the Amended Complaint. Plaintiffs' allegations that Defendant Clabes is "an executive vice-president of Midwest," and that Defendant Denight is an employee of Midwest are insufficient to satisfy the applicable pleading requirements. Viewing the facts in the light most favorable to Plaintiffs, even if Defendants Clabes and

Denight are officers and employees of Midwest respectively, their titles alone do not identify with particularity their alleged involvement in the scheme to defraud. Plaintiffs' allegations in this regard do not serve to provide fair notice to these Defendants, such that they may prepare pleadings in response to the allegations of fraud. Therefore, the Court finds the Midwest Defendants' argument that Plaintiffs fail to allege RICO predicate acts with the particularity required by Rule 9(b) meritorious only with respect to Plaintiffs' claims against Defendants Clabes and Denight. Plaintiffs' RICO claim is hereby dismissed with respect to those Defendants.

### 4. RICO Conspiracy

Finally, Defendant USMR argues that Plaintiffs fail to properly plead a claim for conspiracy to commit a RICO violation. (Doc. # 38 at 10) Defendant USMR states that "[t]here is nothing—other than Plaintiffs' bare conclusory allegations—that would show that USMR was either aware of, or consciously decided to enter into, a conspiracy." *Id.* at 11. The conspiracy element of a RICO claim is generally said to be comprised of two agreements. *United States v. Joseph,* 835 F.2d 1149, 1152 (6th Cir.1987) (quoting *United States v. Neapolitan,* 791 F.2d 489, 499 (7th Cir.1986)). The first is "an agreement to conduct and participate in the affairs of an enterprise," and the second is "an agreement to the commission of at least two predicate acts." *Id.* Moreover, a defendant's agreement to participate in the RICO conspiracy may be inferred from acts or conduct consistent with the existence of such a conspiracy. *See United States v. Hughes,* 895 F.2d 1135, 1141 (6th Cir.1990); *see also Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 961 (7th Cir.1996) (finding that a "RICO conspiracy, like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred from the circumstances")

In this case, the Court finds Defendant USMR's argument that Plaintiffs fail to properly plead a claim for conspiracy to commit a RICO violation to be without merit. Contrary to Defendant USMR's contentions, Plaintiffs set forth more than bare conclusory allegations that, at the very least, tend to demonstrate that USMR was either aware of, or consciously decided to enter into, the conspiracy. Defendant USMR's agreement to conduct and participate in the affairs of the enterprise may logically be inferred from Plaintiffs' allegations that USMR managed the EAP, which it used in conjunction with the Midwest Defendants to misrepresent the actual loan terms. Furthermore, the Amended Complaint alleges that Defendant USMR, along with the Midwest Defendants used the EAP to generate additional fees to Defendant Wesley, which acted as an agent of USMR by collecting fees for the EAP. In this way, the Amended Complaint alleges specific facts that, if viewed in the light most favorable to Plaintiffs, demonstrate Defendant USMR's voluntary involvement in the scheme.

As to the second agreement necessary to allege a RICO conspiracy claim, the Court may infer an agreement to the commission of the predicate acts discussed in the previous subsection of this Memorandum Opinion and Order. Because the Court finds that Defendant USMR's agreement to participate in the RICO conspiracy may be inferred from its acts or conduct consistent with the existence of such a conspiracy, the Court denies Defendant USMR's Motion to Dismiss on this basis.

### B. Count II: Plaintiffs' FHA Claim

In Count II of the Amended Complaint, Plaintiffs bring a claim under the

FHA, 42 U.S.C. § 3601 *et seq.* More specifically, Plaintiffs allege the following:

> Defendants have made housing unavailable to the Plaintiffs because of sex in violation of 42 U.S.C. § 3604(a), and have discriminated in the provision of services in connection with the brokering, appraising, maintaining, and provision of services in connection with dwellings, because of sex, in violation of 42 U.S.C. § 3604(b). Defendants actions have the impact of creating separate and/or unequal patterns of access to credit based in whole or in part on the sex of the borrower.
>
> By the actions described above, Defendants have discriminated against Plaintiffs because of sex in the making of real estate-related transactions in violation of 42 U.S.C. § 3605(a)-(b)(1) and (b)(2).

(Doc. # 17 at ¶¶ 123–124) Both the Midwest Defendants and Defendant USMR generally move the Court to dismiss Plaintiffs' FHA claim. The Court considers the FHA claim against the Midwest Defendants and Defendant USMR in turn.

**1. FHA Claim Against the Midwest Defendants**

In their Motion to Dismiss, with the exception of Defendants Clabes and Denight who shall be discussed *infra*, the Midwest Defendants do not seek to dismiss Plaintiffs' claim brought under 42 U.S.C. § 3605. (Doc. # 46 at 17) Section 3605 states:

> (a) In general
>
> It shall be unlawful for any person or entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms and conditions of such a transaction, because of race, color, reli-

gion, sex, handicap, familial status, or national origin.

> (b) "Residential real estate-related transaction" means any of the following:
>
> (1) The making or purchasing of loans or providing other financial assistance—
>
> (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or
>
> (B) secured by residential real estate.
>
> (2) The selling brokering, or appraising of residential real property.

42 U.S.C. § 3605(a)-(b)(2). The Midwest Defendants do, however, seek dismissal of Plaintiffs' claims brought pursuant to 42 U.S.C. § 3604. *Id.* That statute provides, in pertinent part, the following:

> [I]t shall be unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a)-(b). The Midwest Defendants argue that Plaintiffs' FHA claims fail because there was no sale or rental of a dwelling, as required the statute. (Doc. # 46 at 17) The Midwest Defendants assert that the Amended Complaint contains only allegations that they refinanced homes which Plaintiffs already owned. *Id.* at 18. Accordingly, these Defendants argue that "[r]egardless of how oppressing Plaintiffs claim the terms of the loans to be, the fact remains that there was no 'sale' of the home." *Id.* Alternatively, the

Midwest Defendants argue that even if the terms of § 3604 apply to refinancing that causes a homeowner to lose ownership of the dwelling, Plaintiffs have failed to allege such facts within the context of the Amended Complaint. *Id.* at 20.

In response, Plaintiffs argue that they have properly stated a claim that the Midwest Defendants discriminate against women under the FHA by deliberately targeting women for predatory loans. (Doc. # 52 at 3) The basis for Plaintiffs' argument involves practices referred to as "redlining" and "reverse redlining." *Id.* at 3–12. Plaintiffs explain that redlining is "the imposition of barriers to occupancy in the form of higher mortgage-interest rates or refusals to make loans in connection with housing." *Id.* at 5 (quoting *Laufman v. Oakley Bldg. & Loan, Co.*, 408 F.Supp. 489, 496 (S.D.Ohio 1976)). With respect to reverse redlining, Plaintiffs state that while "[r]edlining is the practice of denying the extension of credit to specific geographic areas due to the income, race, or ethnicity of its residents.... [r]everse redlining is the practice of extending credit on unfair terms to those same communities." *Id.* at 7–8 (quoting *United Cos. Lending Corp. v. Sargeant*, 20 F.Supp.2d 192, 203 n. 5 (D.Mass.1998)).

In this case, Plaintiffs argue that Defendants' conduct constitutes reverse redlining because they extended loans designed to fail and easily result in loss of Plaintiffs' homes which, in turn, makes housing unavailable within the meaning of § 3604(a). *Id.* at 8. Similarly, Plaintiffs contend that Defendants' conduct violates § 3604(b) because "they target females for predatory loans that impose onerous, and often fraudulent, terms and conditions—including excessive interest rates, excessive charges, and balloon payments." *Id.* On this basis, Plaintiffs urge this Court to

deny the Midwest Defendants' Motion to Dismiss.

Upon thorough review of the arguments as set forth by the parties, the Court finds there to be two relatively narrow issues involved in resolving the Motion to Dismiss filed by the Midwest Defendants as it applies to Plaintiffs' § 3604 claims. The first issue before the Court is whether the phrase "[to] otherwise make unavailable" in § 3604(a) applies to the conduct alleged in the instant case, which requires the language to extend beyond the actual sale or rental of a dwelling. Here, Plaintiffs suggest that this Court adopt an approach concerning this language that would permit it to encompass the refinancing of a home mortgage on previously owned property. The second issue before the Court is if the facts as alleged by Plaintiffs violate § 3604(b)'s prohibition on discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith" on the basis of sex. The Court now examines these issues respectively.

### a. "Unavailability" pursuant to § 3604(a)

The United States District Court for the Southern District of Ohio addressed a similar issue in a case entitled *Laufman, et al. v. Oakley Building & Loan Co., et al.*, 408 F.Supp. 489 (S.D.Ohio 1976). In that case, the plaintiffs urged the court to find that " § 3604(a) not only prohibits conduct constituting a refusal to sell or rent, but also conduct that 'otherwise make(s) (dwellings) unavailable.'" *Laufman*, 408 F.Supp. at 492 (alterations in original). The plaintiffs argued that the "otherwise make unavailable" language applied to a variety of discriminatory conduct, not merely conduct related to the refusal to sell or rent a dwelling. *Id.* Conversely,

the court characterized the argument set forth by the defendants as follows:

Defendants contend that only § 3605 is applicable as that provision specifically governs financing in housing. Reliance on § 3604, which principally concerns the sale or rental of housing, they argue, violates the principal that a specific statutory provision controls a general provision. Defendants buttress their position by reference to the title of § 3604, 'Discrimination in the sale or rental of housing,' as contrasted with the title of § 3605, 'Discrimination in the financing of housing.'

*Id.* at 492. Thus, the defendants argued that situations that relate to financing are limited to review only under the specific financing provision contained in § 3605.

Ultimately, the *Laufman* Court found the plaintiffs' more liberal reading of the statute to be most favorable.[3] In reaching this conclusion, the court noted that § 3604 has been extended to various types of situations beyond discrimination in the sale or rental of housing. *Id.* Furthermore, the court stated that " § 3605 governs financial arrangements which lie beyond the coverage of § 3604, no matter how broadly § 3604 is read, as well as certain financial arrangements which would appear to come within § 3604's literal terms." *Id.* at 493. The court specified that the type of transactions that would fall outside the scope of § 3604 would be financial assistance requested, for example, for the purpose of "improving, repairing, or maintaining a dwelling, which the owner or occupant previously acquired." *Id.* Because the transaction at issue involved a loan in connection with the sale of a dwelling, the court found that the denial of a loan under the circumstances, given the

high cost of housing, would effectively make housing "unavailable" within the meaning of § 3604. *Id.*

The Sixth Circuit considered an analogous matter in the case of *Nationwide Mutual Insurance Co. v. Cisneros*, 52 F.3d 1351 (1995). There, the court was faced with the issue of whether § 3604(a) and/or (b) governed the issuance and cancellation of property insurance policies. *Cisneros*, 52 F.3d at 1356. The court rejected the plaintiffs' argument that the phrase "otherwise make unavailable or deny" does not include any circumstances that do not directly affect the availability of housing. *Id.* at 1357. In doing so, the Court agreed with the decision in *N.A.A.C.P. v. American Family Mutual Insurance Co.*, 978 F.2d 287, 298 (7th Cir.1992), which held that the provisions in § 3604 and § 3605 overlap and are not mutually exclusive. *Id.* The Court found that "the availability of property insurance has a direct and immediate affect on a person's ability to obtain housing" and that, despite the assertions of property insurers otherwise, the FHA governs the business of property insurance. *Id.* at 1355–60.

Aside from the *Laufman* case and the *Cisneros* case, Plaintiffs fail to direct this Court to, and this Court is unaware of any, cases in this Circuit which shed light on the applicability of § 3604 to facts such as those contained in the instant case. As such, the Midwest Defendants urge this Court to look to persuasive authority addressing this issue. (Doc. # 46 at 18) The Midwest Defendants first direct this Court to *Thomas v. First Federal Savings Bank of Indiana*, 653 F.Supp. 1330, 1337 (N.D.Ind.1987). In *Thomas*, the plaintiffs alleged a violation of § 3604 based upon

---

**3.** Nevertheless, the *Laufman* Court was not compelled to make a definitive ruling because the loan application involved in that case did,

in fact, take place within the context of a sale of a dwelling. *Laufman*, 408 F.Supp. at 493.

the defendants' refusal to grant the plaintiffs a second mortgage on their previously owned home. *Id.* Based upon the fact that the plaintiffs' claim involved financing for previously owned property, the court found that the claim was improperly brought under § 3604. *Id.* Instead, the court found that plaintiffs' claim was properly brought only under § 3605, "which deals specifically with the availability of financing for such purposes as improving and repairing already-acquired property." *Id.; see also Evans v. First Fed. Sav. Bank of Indiana,* 669 F.Supp. 915, 923 (N.D.Ind.1987) (finding that applicants seeking a equity loan on their previously owned home in order to purchase an automobile and a college education failed to state a claim for a violation of the FHA).

Likewise, Defendants point to the case of *Kloth v. Citibank, N.A.,* 33 F.Supp.2d 115, 122 (D.Conn.1998) to support their contention that the § 3604 claim against them fails to state a claim upon which relief can be granted. In that case, a credit card holder brought an action against a credit card issuer alleging, *inter alia,* a claim under the FHA. *Id.* The credit card holder alleged that "the defendant's harassment with collection agencies and discrimination prevented the plaintiff and her family from obtaining a roof over their heads for over a year." *Id.* (internal quotations omitted). Finding that such a claim is not covered by the FHA, the court granted the defendant's motion to dismiss the cause of action. *Id.*

In reviewing these decisions in conjunction with the statutory language of § 3604 and § 3605, the Court is compelled to follow the *Cisneros* decision to the extent that the Sixth Circuit found that these provisions are not mutually exclusive. Under *Cisneros,* it is clear that certain conduct can make housing unavailable under § 3604, while at the same time impinging upon the dictates of § 3605. Consistent with this rationale, the Court finds the Midwest Defendants' argument that Plaintiffs' claim fails because there was no literal "sale or rental" of a "dwelling" to be without merit. It is clear under the relevant case law that such a literal sale or rental is not required by § 3604. What is left for the Court to determine, then, is whether the conduct alleged in the instant action constitutes that which would fall under both § 3604 and § 3605.

In considering this issue, the Court finds it necessary to address Plaintiffs' argument that the mortgage industry is analogous to the insurance industry with respect to the applicability of § 3604 to redlining and reverse redlining practices. (Doc. # 52 at 4–6) In referencing *Cisneros* and numerous other cases, Plaintiffs quote the following language in explanation, "No insurance, no loan; no loan, no house; lack of insurance thus makes housing unavailable [under 3604(a) ]." *Id.* at 5 (quoting *N.A.A.C.P. v. American Family Mut. Ins. Co.,* 978 F.2d 287, 297 (7th Cir.1992)). Critical to the Sixth Circuit's decision in *Cisneros,* however, was the fact that the court found the FHA to be ambiguous as it applies to property insurers. *Cisneros,* 52 F.3d at 1360. Here, Plaintiffs fail to demonstrate that the FHA is likewise ambiguous with respect to financial assistance in the context of previously owned homes. Rather, what Plaintiffs' argument fails to address is that the plain language of § 3605 exists for the purpose of prohibiting redlining and reverse redlining in lending for previously owned homes, which does not by its language reach those practices in the context of the insurance industry. Furthermore, allegations of insurance redlining and reverse redlining often occur in connection with sale of a dwelling, which clearly place such scenarios within the purview of § 3604(a), as was the case with the home mortgage loan in *Laufman.*

The Court finds the decision in *Laufman* to be noteworthy to the extent that it held that the type of transactions that fall outside the scope of § 3604 would be for the purposes of "maintaining a dwelling, which the owner or occupant previously acquired." *Laufman*, 408 F.Supp. at 493. Like the court in *Thomas*, the *Laufman* court ruled that such claims are most properly brought within the ambit of § 3605.[4] In this case, Plaintiffs do not dispute that they owned their homes prior to the refinancing at issue. Plaintiffs, however, point to several cases in which courts have construed the "otherwise make unavailable" language quite broadly. (Doc. # 52 at 4 (citing *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986)) (holding that discriminatory appraisals violate § 3604(a) because they "may effectively prevent blacks from purchasing or selling a home for its fair market value"); *Reeves v. Carrollsburg Condo Ass'n*, 1997 U.S. Lexis 21762, 1997 WL 1877201 (D.D.C.1997) (protections of § 3604(a) extend to racial harassment of one condo owner by another); *Williams v. Poretsky Mgmt.*, 955 F.Supp. 490 (D. Md. 1996) (same holding with respect to sexual harassment)). In addition, Plaintiffs argue that:

> [e]ven where it does not literally make specific housing 'unavailable,' Defendants' reverse redlining violates § 3604(a) because it constitutes the type of adverse treatment that is based on sex. Defendants' predatory loan scheme adversely affects its victims not just by taking housing away through the greatly increased risk of foreclosure, but also by imposing terms and conditions that reduce or limit an individual's ability to use and enjoy the housing. The most significant burden is caused by the exorbitant monthly payments on the loans which force Plaintiffs to divert funds which would otherwise be available for needed repairs and maintenance. Plaintiffs are unable to benefit from other financial advantages that the equity in the house might otherwise afford.

*Id.* at 9. The Court finds no basis for such a finding in the relevant case law.

■ To the contrary, research of the relevant cases indicates that courts expanding the "otherwise unavailable" language under this theory have generally done so in light of the ambiguity of the FHA to insurance coverage. For example, in *Lindsey v. Allstate Insurance Co.*, 34 F.Supp.2d 636, 642 (W.D.Tenn.1999), the case which is referred to in this context by Plaintiffs, the court stated that "[t]he FHA would provide little vindication to the policy of nondiscrimination in housing if it prohibited property insurers from discriminating against individuals seeking a home, but then subsequently gave property insurers free reign to discriminate in the renewal of property insurance to the same individuals." *Id.* Such is not the case with

**4.** Plaintiffs attempt to use the *Thomas* decision to their advantage, stating "[i]ndeed, the *Thomas* court stated that, 'red-lining practices in cases affecting the availability of housing are actionable under section 3604....'" *Thomas*, 653 F.Supp. at 1337. While at first glace this statement appears to constitute a persuasive argument against granting the Motion to Dismiss Plaintiffs' § 3604 claim, the Court must note that the entirety of the *Thomas* Court's conclusion was that "[a]lthough red-lining practices in cases affecting the availability of housing are actionable under section 3604, red-lining practices *which affect the availability of financing are more properly brought under section 3605.*" *Id.* (emphasis added) (citations omitted). Thus, the court found that the allegations in the case did not implicate § 3604; rather, the court turned to § 3605, "which deals specifically with the availability of financing for such purposes as improving and repairing already-acquired property." *Id.*

home mortgages. It clear that § 3604 relates to acquiring a home, while § 3605 applies to the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired. Based upon the foregoing, the Court finds that while § 3604(a) applies to transactions beyond the literal sale or rental of a dwelling, it is inapplicable to the facts and circumstances of the instant matter. The circumstances presented here fit squarely within the provisions of § 3605 and, as such, the Midwest Defendants' Motion to Dismiss is granted to the extent that Plaintiffs attempt to bring that claim pursuant to § 3604(a).

### b. Discrimination in Terms and Conditions pursuant to § 3604(b)

Plaintiffs also make the argument that redlining and reverse redlining violate § 3604(b). (Doc. # 52 at 6). In making this argument, Plaintiffs examine a litany of cases that hold a claim is actionable under § 3604(b) if the defendant's conduct unreasonably interferes with the use or enjoyment of the property because of race, color, religion, sex, familial status, or national origin. *Id.* at 9–12. As with § 3604(a), the Court finds Plaintiffs' argument in this regard to be without merit.

 As the Court stated in the previous subsection of this Memorandum Opinion and Order, the cases referenced by Plaintiffs are not controlling, nor do they present facts and circumstances relevant to the case at bar. This case involves refinancing of homes previously owned by Plaintiffs—the very circumstances presented by § 3605 of the FHA. To expand the scope of § 3604 would be to say that the issue of refinancing is ambiguous under the statute and that, consistent with its purpose, the statute should provide a remedy with respect to this topic. Such a

remedy, however, is already contained in § 3605, which is clear and unambiguous. Therefore, the Court finds no basis exists upon which it can deny the Midwest Defendants' Motion to Dismiss on this issue. Accordingly, the Motion is granted to the extent that the Midwest Defendants seek dismissal of Plaintiffs' claim pursuant to § 3604(b). Prior to addressing Plaintiffs' FHA claim against Defendant USMR, the Court examines Plaintiffs' FHA claim under § 3605 as it applies to Defendants Clabes and Denight.

### c. § 3605 Claim Against Clabes and Denight

Defendants Clabes and Denight seek dismissal of the § 3605 claim, arguing:

> Plaintiffs have not alleged that Defendants Clabes and Denight were involved in any of the loan transactions. Plaintiffs only allege that Mrs. Eva's intermediary contacted Defendants Clabes and Denight after the loan was closed. Plaintiffs have utterly failed to allege any discrimination on Defendants Clabes' and Denight's behalf. Because Plaintiffs' First Amended Complaint fails to allege any factual involvement in the underlying loan transactions, Plaintiffs' First Amended Complaint against Defendants Clabes and Denight should be dismissed.

(Doc. # 46 at 38) As noted previously, the fundamental purpose of the pleading requirements in the Federal Rules is to give adequate notice to the defendants. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir.1998). The court should not dismiss a claim pursuant to Rule 12(b)(6) unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *See id.* In accordance with this standard, the Federal Rules are designed to be liberal, in that they seek to permit cases to be decid-

ed on the merits after adequate development of facts uncovered in the process of discovery. *See id.*

 In Plaintiffs' Statement of Points and Authorities in Opposition to Defendants' Motions, Plaintiffs present this Court with cases that stand for the proposition that a superior's mere knowledge of housing discrimination committed by a subordinate employee is sufficient to support a claim against the superior under the FHA. (Doc. # 52 at 15) Unlike fraud, allegations of FHA violations are not subject to heightened pleading requirements under the Rules. Viewing the facts in the light most favorable to Plaintiffs, as the Court must, the factual allegations and the reasonable inferences therefrom are sufficient to provide notice to Defendants Clabes and Denight with respect to the FHA claim. Here, Plaintiffs' allegations that Defendant Clabes is "an executive vice-president of Midwest," and that Defendant Denight is an employee of Midwest[5] are sufficient to satisfy the applicable pleading requirements. Under the law as cited by Plaintiffs, the fact that Defendants Clabes and Denight may be superiors at Midwest prompts this Court to find that the FHA claim against them is best resolved on the merits. Accordingly, the Motion to Dismiss the § 3605 claim as to these Defendants is denied.

### 2. FHA Claim Against Defendant USMR

 In its Motion to Dismiss, Defendant USMR argues that the Amended Complaint fails to allege that it is involved in "residential real-estate transactions" within the meaning of the FHA. (Doc. # 38

at 11) Defendant USMR states that § 3604 and § 3605 apply to mortgage lenders, bankers, mortgage arrangers, and creditors—they do not apply to other entities, such as itself. *Id.* In support of this proposition, Defendant USMR cites a single case captioned *Steptoe v. Beverly Area Planning Ass'n,* 674 F.Supp. 1313 (N.D.Ill. 1987). *Id.* at 12–13.

In *Steptoe,* the plaintiffs class, consisting of minority individuals seeking homes, sued a non-profit corporation under the FHA. *Id.* The plaintiff class asserted that the non-profit corporation violated the statute based upon its practices of providing limited information about housing availability in integrated areas to only white persons, while providing information about nonintegrated areas only to black persons. *Id.* The purported purpose of this practice was to promote the maintenance of a stable and integrated community. *Id.* The non-profit corporation filed a motion to dismiss the FHA claims brought by the plaintiff class. *Id.*

In resolving the motion, the court held that despite the broad scope of § 3604(a), "courts still have insisted upon a showing that the discriminatory action directly affected the availability of housing." *Id.* at 1319. Finding that even the most expansive interpretations of § 3604(a) do not extend coverage beyond entities that "directly provide housing or those that are integrally involved in the sale or financing of real estate," the court dismissed the § 3604(a) claim because the defendant did not "exercise sufficient control over the market so as to affect the availability of housing." *Id.* at 1320–021. As to the § 3604(b) claim brought by the plaintiff

---

**5.** Evidence in the record exists to support a finding that Defendant Clabes is a "Senior Vice President, Communications" and that Defendant Denight is a "Vice President for Retail Operations" of Midwest, which further

supports Plaintiffs' contention that these Defendants had knowledge of the alleged discrimination as superiors and took no action in response to it. (Doc. # 52, Ex. 11)

class, the court similarly dismissed the claim on the basis that the defendant's limited role in distributing housing information was too far removed from transactions in the commercial residential market to be considered services under the meaning of the statute. *Id.* at 1332. Finally, the court found that the claim brought pursuant to § 3605 lacked merit because the defendant had "no connection whatsoever with the financing of real estate." *Id.* Therefore, the court dismissed the FHA claims against the defendant.

Here, Defendant USMR argues that Plaintiffs' Amended Complaint alleges only that USMR manages the EAP, which pays one extra mortgage payment each year with the funds drawn from the mortgagor's checking account. (Doc. # 38 at 13) Furthermore, Defendant USMR remarks that the Amended Complaint fails to allege that USMR is a traditional real estate-related business as required by the FHA. *Id.* It states:

> for example, the [Amended] Complaint does not allege that USMR is a bank, arranges mortgages, lends money for the purposes of residential real estate, or is a creditor of any of the individual Plaintiffs. Nor does the [Amended] Complaint allege that USMR owns real estate, is a real estate agent or broker, is affiliated in any with real estate agents or brokers, or is involved in the sale, rental, or transfer of real estate, so as to state a claim under § 3604.

*Id.* Finally, Defendant USMR argues that the Amended Complaint does not allege facts to support a conclusion that it provides financial assistance connected with dwellings.[6] *Id.* Accordingly, Defendant USMR seeks to have Plaintiffs' FHA

claims against it dismissed in their entirety. *Id.*

Plaintiffs only direct response to Defendant USMR's argument in this regard is contained in a footnote in the Statement of Points and Authorities in Opposition to Defendants' Motions. (Doc. # 52 at 7 n. 5) There, Plaintiffs attempt to distinguish *Steptoe* on a factual basis. *Id.* Plaintiffs explain that the non-profit corporation in that case is distinct from Defendant USMR in that USMR "is a for-profit corporation that manages the 'Equity Acceleration Program' charging Plaintiffs both to sign up for the program, and imposing a transaction fee every time payments are made on Plaintiffs' mortgages." *Id.* For these reasons, Plaintiffs contend that Defendant USMR is subject to the FHA. *Id.*

Both Plaintiffs and Defendant USMR fail to direct this Court to, and this Court is unaware of any, existing controlling law on this issue. With respect to Plaintiffs' claims against Defendant USMR under § 3604, however, this Court finds it only logical to follow its ruling with respect to that claim against the Midwest Defendants, which arises out of the same facts and circumstances. For the reasons set forth in the previous subsections of this Memorandum Opinion and Order, the Court finds that the phrase "[to] otherwise make unavailable" in § 3604(a) does not apply to the conduct allegedly engaged in by Defendant USMR in the instant case. On the same basis, the facts as alleged by Plaintiffs cannot be said to have violated § 3604(b)'s prohibition on discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith" on the basis of sex. The sole distinct issue which

---

**6.** Although it is not included in the basis for the decision contained herein, the Court notes the irony presented when a party, whose name is "U.S. Mortgage Reduction, Inc.," argues that it is not involved in real estate-related transactions.

arises from Defendant USMR's Motion here is whether it, having a different role in the alleged scheme than the Midwest Defendants, may be held liable under § 3605.

Section 3605 requires that the entity be one "whose business includes engaging in residential real estate-related transactions." 42 U.S.C. § 3605(a). Furthermore, the term "residential real estate-related transaction" means, in relevant part, the making or purchasing of loans or providing other financial assistance for maintaining a dwelling or secured by residential real estate. *Id.* at § 3605(b)(1)(A)-(B). In this case, the Amended Complaint alleges that Defendant USMR is a separate entity affiliated with Carson and Wesley, whose EAP is a "fraudulent scheme to extract excessive funds from borrowers." (Doc. # 17 at ¶ 18) The Amended Complaint further alleges that Plaintiff Eva was charged approximately $1,000 for her participation in the EAP, and that Plaintiff Folkman was shown USMR sheets that incorrectly characterized her loan. *Id.* at ¶¶ 27, 78.

Apparently, Defendant USMR argues that because there is no allegation that it participated directly in the scheme to defraud by having direct contact with Plaintiffs, the Amended Complaint fails to state a claim against it under § 3605. The Court finds this argument to be without merit. Here, the role of Defendant USMR is entirely distinguishable from that of the defendants in the *Steptoe* case. Viewing the facts in the light most favorable to Plaintiffs, the Court finds that the Amended Complaint contains sufficient allegations against Defendant USMR to maintain a § 3605 claim against it. The plain language of the statute does not, as Defendant USMR contends, require a defendant to be a mortgage lender, banker, mortgage arranger or creditor. (Doc. # 38 at 12) To the contrary, the plain language of § 3605 merely requires that the entity conduct business which "*includes* engaging in residential real estate-related transactions." 42 U.S.C. § 3605 (emphasis added). Thus, the entity need not be specifically existing for the purpose of engaging in real estate-related transactions; such activity need only be "included" as one portion of its overall functioning.

In addition, the term "residential real estate-related transaction" applies to, *inter alia,* "providing other financial assistance for maintaining a dwelling." *Id.* at § 3605(b)(1)(A)-(B). In its Motion to Dismiss, Defendant USMR concedes that the Amended Complaint alleges that "USMR manages the EAP program, which pays one extra mortgage payment each year drawn from the mortgagor's checking account." (Doc. # 38 at 13) This conduct alone may be construed as providing other financial assistance for maintaining a dwelling, especially in light of the allegation that Plaintiffs were charged fees in connection that program. Nowhere does the statute require "other financial assistance" to be in the form of a loan or otherwise. Rather, the term "other financial assistance" was not specifically defined. As such, the allegation that USMR's EAP served to misrepresent the terms of the loans is sufficient to survive the Motion to Dismiss. Unlike in *Steptoe*, the alleged role of Defendant USMR is not too far removed from transactions in the commercial residential market, nor is it lacking any connection to the financing of residential real estate, as to warrant dismissal of Plaintiffs' § 3605 claim. Because Defendant USMR is alleged to have a connection with the commercial real estate market, it may have unlawfully discriminated in the context of housing in violation of the FHA.

Based upon the foregoing analysis, the Motion to Dismiss filed by Defendant USMR is granted to the extent that it seeks dismissal of Plaintiffs' § 3604 claims against it. To the extent that Defendant USMR's Motion seeks dismissal of Plaintiffs' § 3605 claim, however, the Motion is denied. Accordingly, Plaintiffs maintain the FHA cause of action against Defendant USMR to the extent that the claim arises under § 3605.

## C. Count III: Plaintiffs' § 4112 Claims

■ In addition to the federal FHA claim, Plaintiffs bring a substantially similar state law claim under Ohio Revised Code Chapter 4112. (Doc. # 52 at 3) More specifically, Plaintiffs allege that Defendants' policies and practices made housing "unavailable" to Plaintiffs because of gender in violation of § 4112.02(H)(1) and § 4112.021, and constituted discrimination because of gender in violation of § 4112.02(H)(3),(5) and §§ 4112.021. Ohio Revised Code Chapter 4112.02(H) provides, in relevant part:

4112.02 UNLAWFUL DISCRIMINATORY PRACTICES

It shall be an unlawful discriminatory practice:

(H) For any person to do the following:

(1) Refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental housing accommodations, or otherwise deny or make unavailable housing accommodations because of . . . sex . . . ;

. . . . .

(3) Discriminate against any person in the making or purchasing of loans or the provision of other financial assistance for the acquisition, construction, rehabilitation, repair, or maintenance of housing accommodations, or any person in the making or purchasing of loans or the provision of other financial assistance that is secured by residential real estate, because of . . . sex . . . ;

. . . . .

(5) Discriminate against any person in the terms or conditions of any loan of money, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair, or maintenance of housing accommodations because of . . . sex. . . .

O.R.C. § 4112.02(H)(1),(3),(5). Ohio Revised Code Chapter 4112.021 relates to unlawful discriminatory practices in credit transactions.

In their respective Motions to Dismiss, with the exception of Defendants Clabes and Denight who shall be discussed *infra*, the Midwest Defendants move only to dismiss Plaintiffs' claim under § 4112.02(H)(1), while Defendant USMR seeks to dismiss Plaintiffs claims against them under § 4112.02 and § 4112.021. The Court looks first to the Motions filed by the Midwest Defendants and Defendants Clabes and Denight together, and next turns to the Motion by Defendant USMR.

### 1. The Midwest Defendants

The Midwest Defendants' argument in support of dismissing Plaintiffs' claim under § 4112.02(H)(1) is fairly straightforward. The Midwest Defendants state that "[l]ike 42 U.S.C. § 3604, O.R.C. § 4112.02(H)(1) simply does not apply to this case." (Doc. # 46 at 22) The Midwest Defendants argue that because there was no alleged sale or rental of a dwelling, nor was Plaintiffs' housing made unavailable, the Court should dismiss Plaintiffs' claims under § 4112.02(H)(1). *Id.*

■ The Court notes, and the parties do not dispute, that both federal and state fair housing claims may be analyzed using

federal case law. *See Ohio Civil Rights Comm'n. et al. v. Harlett, et al.,* 132 Ohio App.3d 341, 344, 724 N.E.2d 1242 (1999) (stating that "[w]hen interpreting R.C. Chapter 4112, Ohio courts have looked to analogous federal statutes and case law for guidance"); (Doc. #46 at 21–22); (Doc. #52 at 3 n. 1). Consequently, the Court may rely upon the federal case law under the FHA to resolve the Motion to Dismiss as it relates to Plaintiffs' claims under Ohio's equivalent fair housing statute in § 4112.

In examining this issue in the context of § 3604 in this Memorandum Opinion and Order, the Court made several findings. The Court recognized that certain conduct can make housing unavailable under § 3604(a) of the FHA, even when there is no literal sale or rental of a dwelling. In determining whether the conduct alleged in the instant action constitutes that which caused unavailability as required by § 3604(a), however, the Court found Plaintiffs' claim to be without merit. The Court found § 3604(a), as well as § 3604(b), inapplicable to the facts and circumstances of this case because the statute in question ambiguously provided the remedy which relates to financial assistance in the context of previously owned homes. Like § 3605, Ohio's § 4112.02(H)(3) and (5) act to prohibit redlining and reverse redlining in lending for previously owned homes. Moreover, although the Court noted that those remedies are not mutually exclusive, the Court could find no basis upon which Plaintiffs' claims could fall within the scope of § 3604. Accordingly, for the reasons set forth previously in this Memorandum Opinion and Order, the Midwest Defendants' Motion to Dismiss Plaintiffs' claim under § 4112.02(H)(1) is granted. In making this ruling, the Court notes that Plaintiffs' claims under § 4112.02(H)(3) and (5) and § 4112.021 remain pending against these Defendants.

Furthermore, consistent with the findings made as to all Defendants with respect to the FHA claim under § 3604, the Court hereby finds that the Motion to Dismiss is likewise granted as to Defendants Clabes and Denight under § 4112.02(H)(1). On the same basis, Plaintiffs' claims under § 4112.02(H)(3) and (5) and § 4112.021 remain pending against Defendants Clabes and Denight. As with Plaintiffs' surviving FHA claim against Defendants Clabes and Denight, the Court finds that latter claims are best resolved on the merits.

### 3. Defendant USMR

Defendant USMR advances two arguments in support of dismissal of Plaintiffs' claims under § 4112.02 and § 4112.021. (Doc. #38 at 13) First, Defendant USMR argues that the Amended Complaint does not allege unlawful discrimination under § 4112.02. *Id.* Second, Defendant USMR contends that the Amended Complaint fails to allege that it is a "creditor" within the meaning of § 4112.021. *Id.* The Court examines these arguments in turn.

#### a. Unlawful Discrimination

Similar to the Midwest Defendants, Defendant USMR states that "[w]ith respect to O.R.C. § 4112.02(H)(1), the [Amended] Complaint does not allege that [it] refused to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, nor does the [Amended Complaint] claim that [it] was involved in any negotiations for the sale or rental of housing accommodations." *Id.* at 14–15. Likewise, with respect to § 4112.02(H)(3), Defendant USMR contends that the Amended Complaint fails to allege that its principal business involves lending money or that it is connected in any way with loaning money to applicants for housing accommodations. *Id.* at 15. Last, with respect to Plaintiffs'

claim brought under § 4112.02(H)(5), Defendant USMR states that the Amended Complaint is deficient because it fails to set forth facts to demonstrate that it was involved in setting the terms and conditions of the loans. *Id.*

Having thoroughly explained in this Memorandum Opinion and Order that the Amended Complaint fails to allege facts sufficient to support a claim under § 4112.02(H)(1) and the corresponding federal statute, the Court finds it unnecessary to re-examine the issue here. For the reasons set forth above, Defendant USMR's Motion to Dismiss Plaintiffs' claim pursuant to § 4112(H)(1) is granted. The Court now considers Defendants' Motion as it relates to §§ 4112.02(H)(3) and (5).

■ Section 4112.02(H)(3) prohibits discrimination against any person in, *inter alia*, the provision of "financial assistance" for the "maintenance of housing accommodations" or the provision of "financial assistance" that is "secured by residential real estate" because of sex. The Court addressed the significance of this very language as it relates to Plaintiffs' claims against Defendant USMR when analyzing the cause of action under equivalent provision of the FHA. In doing so, the Court found that, viewing the facts in the light most favorable to Plaintiffs, the Amended Complaint contains sufficient allegations against Defendant USMR to maintain a § 3605 claim against it. Furthermore, the Court found the phrase "providing other financial assistance for maintaining a dwelling" to be satisfied by allegations in the Amended Complaint that "USMR manages the EAP program, which pays one extra mortgage payment each year drawn from the mortgagor's checking account," especially in light of the allegation that Plaintiffs were charged fees in connection that program. Because the term "other financial assistance" was not specifically defined by the statute, the Court found the allegation that USMR's EAP served to misrepresent the terms of the loans sufficient to survive the Motion to Dismiss.

The Court finds such analysis to be equally applicable to Plaintiffs' claims under § 4112.02(H)(3). Again, the alleged role of Defendant USMR is not too far removed from transactions in the commercial residential market, nor is it lacking any connection to the financing of residential real estate, as to warrant dismissal of Plaintiffs' claim. Because Defendant USMR is alleged to have a connection with the commercial real estate market, it may have unlawfully discriminated in the context of housing in violation of the Ohio Civil Rights statute. Therefore, Defendant USMR's Motion to Dismiss Plaintiffs' claim under 4112.02(H)(3) is denied.

■ As to the claim brought under 4112.02(H)(5), that provision prohibits discrimination against any person in the terms or conditions of any loan of money. Because the Amended Complaint fails to allege that Defendant USMR "loaned" Plaintiffs money, as opposed to providing "assistance" to Plaintiffs through an "Equity Acceleration Program" as in 4112.02(H)(3), Defendant USMR's Motion is granted with respect to § 4112.02(H)(5). The language of the provision requires a "loan of money" and, as such, is not applicable to Defendant USMR. Having resolved the Motion as it applies to § 4112.02, the Court now examines Defendant USMR's claim that it is not a "creditor" pursuant to § 4112.021.

**b. Whether USMR is a "Creditor"**

■ As a general proposition, § 4112.021 provides that it shall be an unlawful discriminatory practice for a "creditor" and a "credit reporting agency"

to engage in certain conduct. The terms "creditor" and "credit reporting agency" are described in the statute as follows:

(A) As used in this section:

(1) "Credit" means the right granted by a creditor to a person to defer payment of debt, to incur debt and defer its payment, or to purchase property or services and defer payment for the property or services.

(2) "Creditor" means any person who regularly extends, renews, or continues credit, any person who regularly arranges for the extension, renewal, or continuation of credit, or any assignee of the original creditor who participates in the decision to extend, renew, or continue credit, whether or not any interest rate or finance charge is required.

(3) "Credit reporting agency" means any person who, for monetary fees or dues or on a cooperative nonprofit basis, regularly assembles or evaluates credit information for the purpose of furnishing credit reports to creditors.

O.R.C. § 4112.021(A)(2)-(3). Simply put, Defendant USMR argues that the Amended Complaint fails to allege that it is either a "creditor" or "credit reporting agency," and, thus, it does not fall within the scope of § 4112.021. Apparently looking to the plain language of the statute, Defendant USMR provides no case law to support its proposition.

Similarly, Plaintiffs fail to provide this Court with any law or argument concerning the applicability of § 4112.021 to Defendant USMR. Plaintiffs' sole mention of this Ohio claim appears in a footnote that states "Plaintiffs have reviewed Defendants' argument in response to the ECOA claim and agree that the ECOA claim is duplicative of the claim made pursuant to O.R.C. § 4112.021 and 4112.02." (Doc. # 52 at 3 n. 1). Although Plaintiffs state that "[t]he Ohio ·fair housing legislation

found at O.R.C. 4112.01 *et seq.* has been deemed to be 'substantially equivalent' to the Federal Fair Housing Act," Plaintiffs' memoranda filed in opposition to the Motion are devoid of any mention of whether that section or its purported equivalent even reach Defendant USMR. This Court shall not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. While there may, in fact, be allegations not stated in the Amended Complaint that would tend to demonstrate that Defendant USMR extended "credit" and thereby became a "creditor" within the meaning of the statute, Plaintiffs are required to plead more than bare legal conclusions with respect to each count in the Amended Complaint. Here, Plaintiffs fail to do so. Based upon the foregoing, Defendant USMR's Motion to Dismiss Plaintiffs' claim under § 4112.021 is granted.

### D. Count IV: Fraud

 The Midwest Defendants and Defendant USMR argue that Plaintiffs fail to plead fraud with the particularity required by Rule 9(b). Because Count IV of the Amended Complaint alleges fraud, it must be pleaded with such particularity. As stated previously in the context of Plaintiffs' RICO claim, the Sixth Circuit reads Rule 9(b) liberally and requires a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D.Mich.1992)) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988)). Moreover, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to sup-

port an inference that they were knowingly made." *Id.* (quoting *Ballan*, 814 F.Supp. at 1385). The threshold test is whether the complaint places the defendant on "sufficient notice of the misrepresentation," allowing the defendant to answer in an informed way plaintiff's claim of fraud. *Id.* In other words, "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co.,* 848 F.2d at 679.

 In light of the foregoing proposition, although a complaint may adequately state a claim for relief under Rule 8, it may not necessarily satisfy the particularity requirement of Rule 9(b). Wright and Miller, in discussing the balance to be struck between the two Rules, have said that "it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the Rules." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298. Accordingly, Rules 9(b) and 8 must be read together in order to avoid abrogation of the overall philosophy of notice pleading contemplated by the Federal Rules. The dictates of both rules are met if the complaint "affords the defendant notice of the claims against him and evidences a reasonable belief on plaintiff's part that his complaint has merit." *Gilbert v. Bagley,* 492 F.Supp. 714, 726 (M.D.N.C.1980).

In this case, this Court examined Plaintiffs' satisfaction of Rule 9(b) in the context of the RICO claim, which arises out of the same facts and circumstances. In reviewing the arguments set forth by the parties on this issue, the Court found the Midwest Defendants' Motion to be meritorious in part. In so holding, the Court found that the Amended Complaint provides fair notice to only certain Defendants in compliance with Rule 9(b). More specifically, the Court found that the Amended Complaint sets forth in detail the alleged fraudulent conduct of Defendants Butzer, Flynt, Welsh, Mayer Carson, Midwest, USMR, and Wesley, so as to adequately inform each of these Defendants of their alleged responsibility in the purported scheme. However, the Court also found that Plaintiffs failed to allege sufficient detail concerning the fraudulent conduct of Defendants Clabes and Denight in the Amended Complaint to satisfy the dictates of Rule 9(b). The basis for this finding was that Plaintiffs' allegations that Defendant Clabes is "an executive vice-president of Midwest," and that Defendant Denight is an employee of Midwest are insufficient to satisfy the applicable pleading requirements. Viewing the facts in the light most favorable to Plaintiffs, even if the Court accepted as true the fact that Defendant Clabes is an officer of Midwest and Denight is an employee of Midwest, these allegations alone do not identify with particularity their alleged involvement in the scheme to defraud. Finding that Plaintiffs' allegations fail to provide fair notice to these Defendants, the Court found the Motions to Dismiss lacking merit, with the exception that Plaintiffs fail to satisfy the particularity requirement as to Defendants Clabes and Denight. The Court hereby holds that those findings are equally applicable here. The Motions to Dismiss Plaintiffs' fraud claim are denied, except to the extent that the Midwest Defendants seek to have the claim dismissed against Defendants Clabes and Denight. Plaintiffs' fraud claim is, therefore, dismissed with respect to Defendants Clabes and Denight.

### E. Count V: Unconscionability

 In Count V of the Amended Complaint, Plaintiffs attempt to state a cause of

action for unconscionability, claiming that this Court should declare the loan agreements and related documents "null and void from their inception," or "strike the unconscionable terms and charges from the agreements, refunding sums to the Plaintiffs where appropriate." (Doc. # 17 at ¶¶ 146–47) The Midwest Defendants and Defendant USMR move to dismiss this claim on the ground that unconscionability is defense to a contract action, rather than an independent cause of action that may be stated as a basis for relief. (Doc. # 46 at 26–27); (Doc. # 38 at 19)

■■■■■ The doctrine of unconscionability applies when there exists an absence of meaningful choice on the part of one of the parties to a contract, together with contract terms that unreasonably favor the other party. *See Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993); *see also Orlett et al. v. Suburban Propane et al.,* 54 Ohio App.3d 127, 129, 561 N.E.2d 1066 (1989) (stating that contracts or clauses thereof are deemed unconscionable "where on party has been misled as to the 'basis of the bargain,' where a severe imbalance in bargaining power exists, or where specific contractual terms are outrageous"). Stated another way, a "contract is unconscionable if it did not result from real bargaining between the parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." *Id.* (internal quotation and citation omitted). While courts typically do not protect parties from mistakes in judgment, the doctrine of unconscionability is an exception applicable only when the court is persuaded that the contract is so one-sided as to be unlawful. *See id.*

In addition to other cases, Plaintiffs rely primarily upon *Taylor v. Eggleston,* 1993 Ohio App. LEXIS 2869, 1993 WL 418489 (1993) in support of their position that unconscionability is recognized in Ohio as an affirmative claim to set aside the contract. (Doc. # 52, Ex. 13 at 2) In that case, the plaintiff filed suit to have the contract set aside under, *inter alia,* unconscionability. *Id.* The trial court found for the plaintiff on the sole ground that the contract was unconscionable. *Id.* The defendant appealed, claiming that "the trial court should not have rescinded the contract and conveyance of the remainder interest upon the ground of unconscionability." *Id.* The appellate court upheld the lower court's decision, holding that the evidence supported the trial court's conclusion to rescind the agreement based upon unconscionability. *Id.* at 3.

Upon review of the arguments made by the parties in addition to the cases cited therein, this Court fails to see why a plaintiff cannot file suit for at least declaratory relief raising the issue of unconscionability. As a general proposition, most matters of defense can be raised affirmatively in a declaratory judgment action, so long as there is an actual controversy between the parties. In this case, for example, the controversy arises from a real threat that the loan agreements in question will be enforced. The Court finds it most logical that the issue raised here be treated the same as in a patent action where, for example, the usual case is a suit for patent infringement, but if the patent holder threatens an infringement suit, the alleged infringer can bring a declaratory judgment action asking that the patent be declared invalid. *See e.g., Patrol Valve Co. v. Robertshaw–Fulton Controls Co.,* 210 F.2d 146 (6th Cir.1954) (action for declaratory judgment of invalidity and non-infringement of a patent); *International Med. Prosthetics Research Ass'n, Inc. v. Gore Enter. Holdings, Inc.,* 787 F.2d 572 (Fed. Cir.1986) (action brought for declaratory judgment of invalidity of a patent). Con-

sistent with this theory, invalidity, like unconscionability, is typically an affirmative defense; however, the Court is aware of no reason why it will not support a claim for declaratory relief.

■ This being the case, unconscionability may also be raised in an action to reform a contract. Under either scenario, once the plaintiff obtains either a declaration that the contract or some of its terms are invalid, or has the contract reformed to eliminate the unconscionable terms, the plaintiff can further request damages to the extent that the unconscionable terms have been enforced in the past. Thus, the Court finds that unconscionability may be an affirmative claim if pleaded correctly. To find otherwise would be to hold that a party who has entered into an unconscionable contract would have to breach it, get sued, and raise unconscionability as a defense before the Court may examine the enforceability of the contract. Moreover, in the event that the defense of unconscionability is unsuccessful, then the losing party is left to deal with the consequences of the breach which, in this case, may be a monetary judgment in addition to the loss of the home to foreclosure. The ability of the party suspecting unconscionability to raise that issue in a declaratory judgment action or in an action for reformation permits the party to both comply with the contract as written, thus avoiding the consequences of a breach, and still obtain a declaration as to the enforceability of the contract. In this Court's opinion, the law favors the latter. For these reasons, the Court denies the Motions to Dismiss Plaintiffs' unconscionability claim on the basis that it may not constitute an affirmative basis for relief.

### F. Count VI: Conversion

■ In Count VI of the Amended Complaint, Plaintiffs assert that "Defendant Wesley Financial knowingly and intentionally misrepresented to Ms. Eva, Ms. Folkman, Ms. Gainer and Ms. Monrow that they would arrange to pay of [sic] their mortgages faster by collecting the payment twice per month, and by submitting the first payment earlier in the month, they would reduce the amount of interest charged per month." (Doc. # 17 at ¶ 149) In making such representations, Plaintiffs state that Defendants bound themselves to deliver the "first bi-weekly payment immediately to the holder of the mortgage." *Id.* at ¶ 150. To the contrary, however, Plaintiffs contend that Defendant Wesley retained the first payment, then submitted the first payment along with the second payment at the end of the month. *Id.* at ¶ 151. Plaintiffs allege that Defendant Wesley's practice of retaining the first payment until the end of the month caused them to receive no interest reduction. *Id.* Furthermore, Plaintiffs state that "[d]uring the interim between the first bi-weekly payment and the second, Defendant Wesley Financial unlawfully, wrongfully and fraudulently exercised dominion and control over [their] property . . . ." *Id.* at ¶ 152. Because Plaintiffs contend that Defendant Wesley knowingly deprived them of beneficial use of their property, Plaintiffs claim that Defendant Wesley committed the common law tort of conversion. *Id.* at ¶¶ 153–54.

■ The claim of conversion is generally defined as "the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner." *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm'n,* 913 F.Supp. 1031, 1043 (N.D.Ohio 1996). Under Ohio law, the elements of a conversion of property claim are: (1) the plaintiff's ownership or right to the possession of the property at the time of the conversion; (2) the defendant's

conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *See NPF IV, Inc., et al. v. Transitional Health Servs., et al.*, 922 F.Supp. 77, 81 (S.D.Ohio 1996). With respect to the conversion of money, a claim has been allowed "where the funds in question were specific or sequestered, identifiable monies or funds entrusted to the defendant's care for a specific purpose." *Id.*

Here, Defendant Wesley moves to dismiss Plaintiffs' conversion claim on two grounds. First, Defendant Wesley argues that Plaintiffs fail to state a claim for conversion because they fail to plead the essential elements of the tort of conversion. (Doc. # 46 at 32) Next, Defendant Wesley states that Plaintiffs fail to allege sufficient facts to demonstrate that the funds allegedly converted are identifiable. *Id.* The Court considers these arguments in turn.

With respect to Plaintiffs' alleged failure to set forth the elements of conversion, the Court finds that the argument made by Defendant Wesley is wholly without merit. In the Amended Complaint, Plaintiffs allege sufficient facts to demonstrate that they had ownership of the money at the time of the alleged conversion; that Defendant Wesley unlawfully acquired the money by, *inter alia*, alleged fraud and misrepresentation; and, finally, damages in the form of interest accrued on the respective mortgage loans and deprivation of the use of their own funds during the period in which Defendant Wesley delayed payment. Contrary to Defendant Wesley's assertions, the Amended Complaint does not allege that it acquired the mortgage payments lawfully. *See* (Doc. # 17 at ¶ 149) (stating that Defendant Wesley "knowingly and intentionally misrepresented to Ms. Eva, Ms. Folkman, Ms. Gainer and Ms. Monroe that they would arrange to pay of[sic] their mortgages faster ....") Furthermore, Plaintiffs allege that Defendant Wesley's possession of the mortgage payments was a part of the overall scheme to deprive them of money. Given those allegations in the Amended Complaint, the Court denies Defendant Wesley's Motion to Dismiss on this basis.

Turning to Defendant Wesley's argument that the funds are not identifiable, the Court finds this argument to be equally lacking in merit. The Amended Complaint claims that the funds at issue were specific in amount, and that they were entrusted to Defendant Wesley's care for a specific purpose. That is, the funds were a specified amount paid by Plaintiffs two times each month in compliance with the EAP. These funds, when they eventually were attributed to the account at the end of the month, went into the individual accounts for payment of the mortgage. The Court finds that the facts as alleged sufficiently identify the funds such that Plaintiffs overcome Defendant Wesley's Motion to Dismiss the conversion claim for this reason.

### G. Count X: Civil Conspiracy [7]

In Count X of the Amended Complaint, Plaintiffs attempt to set forth a claim for civil conspiracy with respect to all Defendants. In turn, Defendants move

---

**7.** The Court notes that there is no need to address Count VII of the Amended Complaint because the ECOA claim contained therein has been voluntarily dismissed. Likewise, the Court need not address the RESPA claim in Count VIII because Defendants Midwest and Wesley, the entities against whom the claim is asserted, have not moved to dismiss that claim. Similarly, the Court need not address the TILA claim in Count IX against Midwest, the only Defendant against whom the claim is asserted, because Midwest has not moved to dismiss the TILA claim. Thus, in resolving the instant Motions, the Court proceeds directly to Count X's claim of civil conspiracy.

to dismiss the civil conspiracy claim because of Plaintiffs' alleged failure to: (1) identify the conspirators; and (2) affirmatively describe the facts that demonstrate each alleged conspirators' agreement to participate in the conspiracy. (Doc. # 46 at 28); (Doc. # 38 at 23)

In Ohio, conspiracy consists of four elements: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. N.Y. City Transit Auth., Inc.,* 90 Ohio App.3d 284, 292, 629 N.E.2d 28 (1993). Plaintiffs sufficiently plead each of these four elements with respect to all Defendants, with the exception of Defendants Clabes and Denight.

In ruling on a motion to dismiss for failure to state a claim, this Court must look only to the Amended Complaint to ensure that Plaintiffs properly allege all elements of a cause of action. Plaintiffs properly allege all elements of a conspiracy with respect to all Defendants, excluding Defendants Clabes and Denight. As to the remaining Defendants, Plaintiffs allege in several parts of the Amended Complaint that the combination of these parties was a malicious combination. They describe the nature of their actions and allege that Defendants orchestrated a scheme whereby Defendants defrauded Plaintiffs out of money and that the scheme was carried out through a pattern of fraud, deceit, and omission of material fact. The description adequately alleges a malicious combination. Second, the Amended Complaint alleges that the conspiracy involved more than two persons. Third, Plaintiffs allege throughout the Amended Complaint that they suffered injury in the form of monetary damages. Fourth and last, Plaintiffs allege an unlawful act independent of the conspiracy.

Consequently, the Motions to Dismiss on this ground are denied as to all Defendants, excepting Defendants Clabes and Denight. The Motion to Dismiss this claim by the latter Defendants is, therefore, granted.

## H. Count XI: Ohio's RICO Statute

In Count XI of the Amended Complaint, Plaintiffs attempt to bring a cause of action for a violation of Ohio's RICO statute found in Ohio Revised Code Chapter 2923.31–36, which is entitled the Pattern of Corrupt Activities Law ("PCA"). All Defendants move to dismiss this claim.

The Ohio Court of Appeals in *Universal Coach, Inc. v. N.Y. City Transit Authority, Inc.* enumerated the elements necessary to establish a pattern of corrupt activity claim under O.R.C. § 2923.32. It stated that the elements constituted the following: "(1) [the] conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." 90 Ohio App.3d 284, 291, 629 N.E.2d 28, 32 (1993). A plaintiff must also allege injury. *Rehab Project, Inc. v. Sarno,* 80 Ohio App.3d 265, 271, 608 N.E.2d 1188, 1191 (1992).

First, as addressed previously in this Memorandum Opinion and Order, Plaintiffs properly plead corrupt activity. Plaintiffs allege that Defendants committed multiple acts of wire fraud, mail fraud, and conversion, which qualify as underlying violations that will attach to Defendants' liability under § 2923.31(I)(2) of the PCA. Second, Plaintiffs sufficiently allege

a pattern of corrupt activity. The PCA defines a pattern of corrupt activity as:

two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

O.R.C. § 2923.31(E). As discussed in this Court's analysis of Plaintiffs' federal RICO claims, the Amended Complaint sets forth numerous incidents of corrupt activity and, thus, satisfies this element of the PCA. Third, the City has properly pled the existence of an enterprise. The PCA defines enterprise as:

any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

O.R.C. § 2923.31(C). Here, Plaintiffs allege that Defendants were a group of associates that functioned as continuing unit and that they acted in concert to commit several unlawful acts. However, as found in the context of the federal RICO claim, Plaintiffs fail to plead sufficient facts to survive a Motion to Dismiss as to the PCA claim against Defendants Clabes and Denight. Therefore, Plaintiffs properly allege an enterprise under the PCA as to all Defendants, with the exception of Defendants Clabes and Denight. Finally, Plaintiffs properly allege injury. In the Amended Complaint, Plaintiffs allege that they suffered monetary damages resulting from Defendants' unlawful actions. Such an allegation satisfies the last pleading requirement of PCA. *See Rehab Project, Inc. v. Sarno,* 80 Ohio App.3d 265, 271, 608 N.E.2d 1188 (1992). On this basis, the Motions to Dismiss Plaintiffs' PCA claim are hereby denied, except as to Defendants Clabes and Denight. Plaintiffs fail to state a cause of action here with respect to those Defendants.

## I. Count XII: Public Policy Claim

 Plaintiffs attempt to advance a public policy claim against all Defendants in Count XII of the Amended Complaint. The entirety of Plaintiffs' public policy claim is the following:

186. Plaintiffs reallege and incorporate herein by reference the preceding paragraphs above.

187. The actions alleged violate Ohio public policy and United States public policy, and have harmed Plaintiffs.

(Doc. # 17 at ¶¶ 186–87) The Midwest Defendants move to dismiss Plaintiffs' public policy claim on the ground that the public policy doctrine applies only to cases arising out of the employment context. (Doc. # 46 at 32) Similarly, Defendant USMR moves to dismiss Plaintiffs' public policy claim, stating that "[b]ecause Plaintiffs' allegations under various federal and Ohio statutes and under the common law fail to state a claim of relief as against USMR, it necessarily follows that Plaintiffs fail to allege a claim for violation of public policy as to USMR." (Doc. # 38 at 26) Therefore, all Defendants assert that Count XII of the Amended Complaint must be dismissed.

As an initial matter, courts have held that a public policy violation may be asserted outside the scope of the employment context under certain circumstances. *Cf. L'Orange v. Medical Protective Co.,* 18 Ohio Misc. 11, 394 F.2d 57 (6th Cir.1968) (finding it contrary to public policy to permit an insurer to use policy cancellation as punishment against dentist who appears as a witness in a malpractice trial). Both state and federal courts, however, are re-

luctant to find a new tort or contract remedy where a remedy already exists. *See e.g., Grigaliunas v. Rockwell Int'l Corp. et al.,* No. 3:98CV7351, 1999 WL 681509 (N.D.Ohio 1999) (stating that the court's failure to extend the public policy tort to plaintiff would not jeopardize the public policy at issue because "plaintiff has a full range of available remedies pursuant to state and federal law"). That is, cases which extend the public policy doctrine generally rely upon the fact that, in the context of the particular case, the plaintiff is otherwise without remedy and permitting the wrongful action would allow important public policy to go unvindicated. *See e.g., Parets v. Eaton Corp.,* 479 F.Supp. 512, 518 (E.D.Mich.1979) (finding that a plaintiff may not utilize a public policy exception when there are other adequate remedies available to him under the law of the United States and the State of Ohio). Here, because Plaintiffs have numerous other remedies available to them pursuant to the law of the United States and the State of Ohio, providing a further remedy under the public policy doctrine is unnecessary. The claim alleged herein is, accordingly, subsumed in the alternative surviving claims in the Amended Complaint. Based upon the foregoing, Plaintiffs' public policy claim is dismissed as to all Defendants.

## IV. CONCLUSION

Therefore, upon consideration and being duly advised, the Motions to Dismiss (Doc. # 32) and (Doc. # 46) are granted in part and denied in part. More specifically, the Midwest Defendants' Motion to Dismiss Plaintiffs' federal RICO claim in Count I is granted to the extent that Plaintiffs fail to state a claim against Defendants Clabes and Denight. (Doc. # 46) Plaintiffs' RICO claim is hereby dismissed with respect to those Defendants. However, the remainder of the Motion to Dismiss Count I made

by the Midwest Defendants is denied. *Id.* Defendant USMR's Motion to Dismiss Count I is, likewise, denied. (Doc. # 32)

With respect to the FHA claims in Count II, Defendants' Motions to Dismiss are granted with respect to Plaintiffs' claims arising under 42 U.S.C. § 3604. (Doc. # 32); (Doc. # 46) Plaintiffs do not state a claim for relief with respect to that provision. Furthermore, the Motions to Dismiss Plaintiffs' claims arising under 42 U.S.C. § 3605 by Defendants Clabes and Denight, (Doc. # 36), and Defendant USMR, (Doc. # 32), are denied.

As to Count III, the Midwest Defendants' Motion to Dismiss Plaintiffs' claim under Ohio Revised Code Chapter 4112.02(H)(1) is granted. (Doc. # 46) In making this ruling, the Court notes that Plaintiffs' claims under § 4112.02(H)(3)and (5) and § 4112.021 remain pending against the Midwest Defendants. The Motion to Dismiss filed by Defendant USMR as to this Count is granted as to the claims arising under § 4112.02(H)(1), (5) and § 4112.021, but denied as to the claim arising under § 4112.02(H)(3). (Doc. # 32)

As to the fraud claim in Count IV, the Motions to Dismiss are denied, except to the extent that Plaintiffs' attempt to state a claim against Defendants Clabes and Denight. (Doc. # 32); (Doc. # 46) Because the Amended Complaint fails to comport with the pleading requirements in Rule 9(b) with respect to Defendants Clabes and Denight, the Motion to Dismiss these Defendants is granted and the fraud claim against them is dismissed. (Doc. # 46)

Similarly, the Motions to Dismiss are denied to the extent that they seek dismissal of the claim of unconscionability in Count V, (Doc. # 32) and (Doc. # 46); the claim of conversion against Defendant Wesley in Count VI, (Doc. # 46); and the

claim of civil conspiracy in Count X, except as to Defendants Clabes and Denight, (Doc. # 32) and (Doc. # 46). As to the latter claim of civil conspiracy in Count X against Defendants Clabes and Denight, the Motion to Dismiss is granted. (Doc. # 46)

As to Count XI, the Motions to Dismiss are denied, except to the extent that Plaintiffs attempt to assert PCA claims against Defendants Clabes and Denight. (Doc. # 32); (Doc. # 46) The Midwest Defendants' Motion to Dismiss Count XI, therefore, is granted with respect to Defendants Clabes and Denight. (Doc. # 46) Accordingly, Count XI is dismissed as it relates to those Defendants.

Finally, the Motions to Dismiss Plaintiffs' public policy claim in Count XII are granted as to all Defendants. (Doc. # 32); (Doc. # 46) Count XII is thereby dismissed in its entirety.

IT IS SO ORDERED.